**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

―――――――――

**No. 04-1895**

―――――――――

In Re: CLAUDE MASON ROYAL; In Re: VIRGINIA
HOWELL ROYAL,

                                              Debtors.

-----------------

BOARD OF SUPERVISORS FOR THE COUNTY OF
CAMPBELL; CAMPBELL COUNTY UTILITIES AND
SERVICE AUTHORITY,

                              Plaintiffs - Appellees,

          versus

CLAUDE MASON ROYAL; VIRGINIA HOWELL ROYAL,

                              Defendants - Appellants,

          and

HERBERT BESKINS, Trustee; UNITED STATES
TRUSTEE FOR THE WESTERN DISTRICT OF VIRGINIA,

                              Parties in Interest.

―――――――――

Appeal from the United States District Court for the Western
District of Virginia, at Lynchburg.   Norman K. Moon, District
Judge.  (CA-04-8-NKM; BK-03-683)

―――――――――

Argued:  March 16, 2005               Decided:  May 24, 2005

―――――――――

Before TRAXLER and DUNCAN, Circuit Judges, and Frederick P. STAMP,
Jr., United States District Judge for the Northern District of West
Virginia, sitting by designation.

————————

Reversed and remanded by unpublished per curiam opinion.

————————

**ARGUED:** Monica Taylor Monday, Lori Dawn Thompson, GENTRY LOCKE RAKES & MOORE, Roanoke, Virginia, for Appellants.  John Michael Perry, Jr., EDMUNDS & WILLIAMS, P.C., Lynchburg, Virginia; David William Shreve, Alta Vista, Virginia, for Appellees.  **ON BRIEF:** Eric J. Sorenson, Jr., EDMUNDS & WILLIAMS, P.C., Lynchburg, Virginia, for Appellees.

————————

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Defendants-Appellants, Claude Royal and Virginia Royal (the "Royals"), appeal the district court's June 12, 2004 order holding that the automatic stay in bankruptcy, 11 U.S.C. § 362, does not operate to bar Plaintiffs-Appellees, the Board of Supervisors for the County of Campbell, et al. (the "County") from exercising the power of eminent domain over the Royals' land. Specifically, the district court, reversing the bankruptcy court, held that 11 U.S.C. § 362(b)(4) excepted the County's proposed use of eminent domain proceedings from the automatic stay provision as a matter of law. For the following reasons, we reverse the district court and remand this case for further proceedings.

I.

The Royals own and operate the Twin Oaks mobile home park in Campbell County, Virginia. In order to provide residents with water, the Royals installed and maintained water wells on Twin Oaks. The County owns and operates a landfill adjacent to Twin Oaks. Between approximately 1996 and 2002, environmental contamination migrated underground from the landfill onto Twin Oaks, making some of the wells unsafe for drinking water provision. The Royals responded by closing the contaminated wells and opening new wells on uncontaminated portions of the property. These wells

are currently providing safe drinking water, though there is a dispute over whether they will continue to do so.

Since 2002, the Royals and the County have been involved in negotiations regarding the cleanup of Twin Oaks and the provision of safe drinking water to residents, but have been unable to reach an agreement. The County claims that it needs to permanently decommission the water wells on the Royals' property and install a public water system at Twin Oaks in order to guarantee safe drinking water. The Royals claim that the current wells are safe and are closely monitored, that permanent decommissioning is unnecessary, and that the County wants to decommission the wells in order to avoid a costly clean-up of the contamination that it created. Specifically, the Royals contend that the County wants to engage in a cheaper and less effective decontamination procedure than that which would be necessary if the land were to support water wells in the future. In short, the parties fundamentally disagree over the best manner to remove the environmental contamination while providing for the health and safety of Twin Oaks residents.[1]

---

[1]Both parties present testimony and related documentation from environmental experts supporting their position concerning the cleanup. Because, however, the bankruptcy and district courts did not conduct an evidentiary hearing on these issues, we take no position on the matter and note only that there are disputed issues of material fact concerning the best method to clean the land.

Unable to reach an agreement concerning the best manner to handle the contamination, the County indicated that it would take portions of Twin Oaks through eminent domain and permanently decommission the wells on the property taken.

Before the County could take the land, the Royals filed a voluntary petition for bankruptcy under Chapter 11 of the Bankruptcy Code (the petition was later converted to a Chapter 13 petition). In October, 2003, the County filed a motion, asking the Bankruptcy Court to determine that its proposed eminent domain taking was excepted from the automatic stay provision of the Code. See 11 U.S.C. § 362. On January 15, 2004, the Bankruptcy Court decided that it did not need to conduct an evidentiary hearing and held, as a matter of law, that the proposed eminent domain taking did not qualify for an exception to the automatic stay.

The County appealed this decision to the District Court, which decided on July 12, 2004, that the proposed taking was excepted from the automatic stay as a matter of law. The Royals timely appeal that decision.

## II.

"We review the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court." In Re: Litton, 330 F.3d 636, 642 (4th Cir. 2003) (internal quotation omitted).

5

Specifically, we review any questions of law, such as those at issue in this case, de novo.  Id.

When a debtor files for bankruptcy, Section 362 of the Bankruptcy Code imposes a broad automatic stay which prohibits "all entities" from, among other things, engaging in "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."  11 U.S.C. § 362(a)(3).  This automatic stay provides one of the fundamental protections of debtors and their estates found in the bankruptcy code.  See Midlantic Nat'l Bank v. N.J. Dep't of Env'l Prot., 474 U.S. 494, 503 (1986); see also S. Rep. No. 95-989 at 52, reprinted in 1978 U.S.C.C.A.N. 5787, 5835 (hereinafter "Senate Report") (noting that the automatic stay provides fundamental protection for both debtors and creditors);  H.R. Rep. No. 95-595 at 340, reprinted in 1978 U.S.C.C.A.N. 5787, 6296-97 (hereinafter "House Report")(same).  Congress, however, has created certain statutory exceptions which prevent the automatic stay from attaching, including the exception at issue in this case which allows for "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory power . . . ."  11 U.S.C. §§ 362(a), 362(b)(4).

This appeal asks us to resolve the narrow question of whether the County's proposed eminent domain taking is an enforcement of a

6

governmental unit's police and regulatory power under Section 362(b)(4). It does not ask us to determine the legality or propriety of the proposed taking, nor does it ask us to determine whether, after motions and hearings in the bankruptcy court, the automatic stay should be lifted. See id. §§ 362(d), 362(e). Those issues remain for further proceedings in the bankruptcy court or the Virginia state courts. At this time, we are only determining the scope of the Section 362(b)(4) exception as a matter of law.

In order for the County's proposed eminent domain taking to qualify for the Section 362(b)(4) exception to the automatic stay, the county must demonstrate that it is 1) enforcing 2) its police and regulatory power. Id. § 362(b)(4). Because we find that the County is not "enforcing" anything, as that term is used in Section 362(b)(4), we hold that the exception does not apply.[2]

A.

In this case, we must ascertain what it means "to enforce" police and regulatory powers. 11 U.S.C. § 362(b)(4). The County urges us to accept a broad meaning of the term "enforce,"

---

[2]Though the parties spend much time discussing the question, we need not reach the issue of whether the County's proposed exercise of eminent domain in this case qualifies as a "police or regulatory power" because our decision turns on the existence of an enforcement action. See generally Safety-Kleen v. Wyche, 274 F.3d 846, 865-66 (4th Cir. 2001) (providing the Fourth Circuit standard for determining if an action qualifies as a police or regulatory power for purposes of Section 362(b)(4)).

synonymous with "to exercise" or "to use."  Under the County's interpretation, any valid exercise of the police power constitutes an "enforcement" of that power under the statute.  The Royals, conversely, contend that "enforcement" is narrower than "exercise," requiring the governmental entity at issue to use its police power to "compel compliance" with a law or regulation that is being violated.

Our inquiry begins, as always, with the plain language of the statute.  S.C. Dep't of Health & Envtl. Control v. Commerce & Indus. Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004).  We determine the meaning of statutory language through "reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole."  Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997).  The statute does not contain an express definition of "enforce," but the statutory context of Section 362(b)(4) in which the language is used suggests a narrow interpretation.

The automatic stay is not permanent.  If a governmental entity (or any party in interest) believes that there is cause to remove or modify the stay, the statute provides a mechanism through which it can request a hearing in the bankruptcy court to present its case.  11 U.S.C. §§ 362(d)-(e).  Additionally, the statute also provides a mechanism through which the governmental entity can request immediate relief from the stay without a hearing if it

8

believes that its interest in the property will suffer "irreparable damage." Id. § 362(f). These "safety valve" provisions help ensure that, if the automatic stay is inappropriately applied, the parties in interest and the bankruptcy court can work quickly to provide the proper relief. Senate Report, 1978 U.S.C.C.A.N. at 5836 ("The stay is not permanent. There is adequate provision for relief from the stay elsewhere in the section."); House Report, 1978 U.S.C.C.A.N. at 6297 (same).

Once, however, the bankruptcy court applies the Section 362(b)(4) exception to the automatic stay, there are no equivalent "safety valve" provisions that allow parties in interest to request a hearing or otherwise review that decision in the bankruptcy court. See 11 U.S.C. § 362(a) (noting that Section (b) operates to prevent the stay from attaching at all). The statutory context therefore indicates that we should read Section 362(b)(4) narrowly because the bankruptcy court can quickly and easily correct issues resulting from a problematic stay, but has no power to correct issues caused by a problematic exception to a stay.

Because we find that the plain language of the statute is unambiguous, our inquiry into the statute's meaning is, as a formal manner, finished. South Carolina Dep't of Health and Envtl. Control v. Commerce and Indus. Ins. Co., 372 F.3d 245, 255 (4th Cir. 2004). We do note, however, that the legislative history of Section 362(b)(4) supports the narrow reading of "enforce"

9

compelled by the statutory context. Specifically, the House and Senate Reports on the statute note that:

> [Section 362(b)(4)] excepts commencement or continuation of actions and proceedings by governmental units to enforce police or regulatory powers. Thus, where a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws, or attempting to fix damages for violation of such a law, the action or proceeding is not stayed under the automatic stay.

Senate Report, 1978 U.S.C.C.A.N. at 5838; House Report, 1978 U.S.C.C.A.N. at 6299.

In other words, the legislative history supports the plain language of the statute indicating that we should treat the Section 362(b)(4) exception narrowly, and only apply it to situations in which a governmental entity is using its police power "to prevent or stop violation of fraud, environmental protection, consumer protection, safety or similar police or regulatory laws." Id.

Therefore, as indicated by the plain statutory language and supported by the legislative history, we hold that a governmental entity does not enforce its regulatory or police power for purposes of Section 362(b)(4) merely through exercising it. Instead, enforcement requires the governmental entity to be correcting violations of or compelling compliance with pre-existing public benefit statutes or regulations.

10

B.

Our inquiry therefore collapses into an analysis of whether the County's proposed use of eminent domain is compelling compliance with or correcting violations of public benefit statutes or regulations. The County suggests that the proposed use of eminent domain "enforces" Virginia Code Section 15.2-1200, Virginia Code Section 15.2-900, Virginia Code Section 15.2-2109, Virginia Code Sections 15.2-5100, et seq., and Virginia Code Section 15.2-928. We disagree.

Virginia Code Sections 15.2-1200, 15.2-2109, 15.2-5100 et seq., 15.2-928, and 15.2-900 are simply enabling statutes which transfer power to local governments to enact legislation, establish municipal facilities, and abate nuisances. See Va. Code. § 15.2-1200 (empowering a county to "adopt such measures as it deems expedient to secure and promote the health, safety and general welfare of its inhabitants which are not inconsistent with the general laws of the Commonwealth"); § 15.2-2109 (empowering localities to acquire or establish utilities); § 15.2-5100 (empowering localities to create local water authorities); § 15.2-928 (empowering localities to establish waste disposal facilities); § 15.2-900 (empowering a locality to "maintain an action to compel a responsible party to abate . . . a public nuisance").[3] They are

---

[3]Section 15.2-900 does contain the language "compel," which the County argues makes any exercise of power under that statute a self-executing enforcement. This argument misses the point. We

11

not statutes that the Royals can be violating or with which the Royals can be compelled to comply. Compare this case, in which the Royals are not accused of violating any statute or regulation, with other cases cited by the parties, all of which involve debtors who were accused of violating specific statutory or regulatory provisions, e.g., Safety-Kleen, Inc. v. Wyche, 274 F.3d 846, 856, 864-66 (4th Cir. 2001) (debtor accused of violating South Carolina financial assurance regulations relating to public safety); United States Dep't of Hous. & Urban Dev. v. Cost Control Mktg. & Sales Mgmt. of Va., 64 F.3d 920, 923-24 (4th Cir. 1995) (debtor accused of violating the Interstate Land Sales Full Disclosure Act); Eddleman v. United States Dep't of Labor, 923 F.2d 782, 783 (10th Cir. 1991) (debtor accused of underpaying workers in violation of the Service Contract Act); In re: Commonwealth Cos., Inc., 913 F.2d 518, 520 (8th Cir. 1990) (debtor accused of rigging construction bids in violation of False Claims Act); In re Commerce Oil Co., 847 F.2d 291, 292 (6th Cir. 1988) (debtor accused of discharging brine into a creek in violation of the Tennessee Water Quality Control Act); Penn Terra Ltd. v. Penn. Dept. of Envtl. Res., 733 F.2d 267, 269 n.1 (3rd Cir. 1984) (debtor accused of violating the

---

are not deciding whether the County has the power to compel compliance with public health and welfare laws. It surely does. We are instead concerned with whether there are any public health and welfare laws that the Royals are accused of violating in the first place. Because the County can point to none (and we can find none), there is nothing for it to "enforce" against the Royals.

12

Pennsylvania Clean Streams Law and the Bituminous Coal Open Pit Mining Conservation Act).  The County presents no case in which a court has allowed an entity to invoke the 362(b)(4) exception despite the fact that the debtor was not accused of violating any pre-existing public health or safety regulations.  We decline the County's invitation to become the first court to do so.

Accordingly, because the County is not compelling compliance with or correcting violations of any public benefit law, it is not "enforcing" its police and regulatory power and, therefore, is not entitled to the Section 362(b)(4) exception to the automatic stay.

III.

Both the Royals and the County spend much energy debating the merits and prudence of the proposed eminent domain taking.  Those arguments are properly presented to the bankruptcy court if and when a party in interest moves pursuant to Section 362(d) to modify or dissolve the automatic stay.  Today, we hold only that the Section 362(b)(4) exception does not operate to except the County's proposed taking from the automatic stay.  Accordingly, we reverse the district court decision holding that the automatic stay does apply and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED

13